All right, ladies and gentlemen, the final case of the morning is United States v. Navarrete-Zavala et al. Counsel, have you decided how you're splitting your time? Yes, Your Honor, I am representing David Navarrete. I am going to take five minutes. I am also going to be addressing Adriana Navarrete's issues, as they are one and the same as my client's. And I believe Mr. Fife and then Mr. Bertram are going to split the remaining balance of the time. But you say you're taking five minutes. Yes, I'm only going to try to take five minutes. And the other two are splitting the remaining 15? That's correct, Your Honor. May it please the Court, Anthony Colombo on behalf of David Navarrete and Adriana Navarrete. David Navarrete and Adriana Navarrete would ask this Court to remand the case for resentencing. The reason why the sentencing was replete with a number of issues, but what I'd like to focus on first is that the district court failed to apply the correct legal standard when denying the party's joint request for minor role. In this case, the district court failed to consider the amendment under Sentencing Guidelines 3B1.2 and the commentary notes that apply with the enumerated factors that the court is to consider when determining whether an individual is substantially less culpable than the average participant. In this case, there was no analysis done by Judge Benitez in addressing the particular factors that he is to consider. Here, procedurally, we're in no different of a stance than Quintero-Leyva, which this Court remanded for resentencing because the Court there failed to make clear what the analysis was and apply the applicable enumerated factors to be addressed by the court when determining whether minor role is applicable. In this case, there was no comparison among other defendants. Rather, what the district court did was expound upon his particular view that the drug guidelines just don't work, especially when considering role. In addition, the district court expounded upon, in his view, the comparison with other defendants in other cases, which was obviously not disclosed to the defendants prior to the sentencing. But what the court failed to do was do a comparative analysis tethered to the five factors enumerated in Section 3B1.2 and the commentary notes. It's clear that there is some ---- You know, you started your argument by referencing the parties' agreement. Does that matter? I think it does, Your Honor. I know it's sort of an atmospheric fact, but as a matter of law, a district judge doesn't have to accept it. It's absolutely true. And we don't judge it any differently if the parties all stipulate to it. I'm not trying to argue with your ---- I mean, I understand why you said it, because it's a nice background for you. But does it make any legal difference at all? No, I don't think it makes a legal difference, Your Honor. But I do think it is a persuasive difference. It is important for the court to consider that both parties presented a united front, that in this particular case, both defendants, David and Adriana, played a minor role within this conspiracy. Both of those individuals were only involved in the money laundering and only pled guilty to the money laundering portion of this particular drug trafficking conspiracy. But the United States is now defending the district court's decision. That's correct, Your Honor. And although the language of the plea agreement allows them to do that, I don't think ---- I think that it's clear that they should not present any information that's inconsistent to this court than what they presented below. And what they presented below was a united front that minor role was appropriate. And it was appropriate because the government conceded that the role that Mr. Navarrete, David Navarrete, played and his sister played was discrete. And it was engaged in opening bank accounts and depositing money. There was no sophistication in terms of a money laundering operation. It was taking money from A and putting it into the bank. That was their discrete role that they played. And there was ---- Why do I recall that there was video footage of him watching one of the cars being pulled over by the side of the highway and reporting that to his mother? Well, that's correct. During one of the transfers of the money, my client happened to record a video. Out on the highway, right. Of the highway patrol doing what was a stop based upon the wiretap that had been there to determine whether or not there was drug money being transferred. And he did report that to his older sister, Gloria, is my recollection of the events. But I don't believe that that is any expansion of his role in the particular case. Why not? Well, because it was ---- I mean, he's not just making a deposit there, counsel. He's out on the highway, right? That's true, Your Honor. That happened. But I think that that was part and parcel of taking possession of the fiscal money and then bringing it to the bank. That had to occur. But beyond that, that was what his role was in this particular conspiracy. And I think the government agreed that they didn't have any information during the yearlong wiretap that was conducted, any information that would be inconsistent with him being involved in or just being involved in money laundering. They had no information that he took part in any of the drug transactions or had any information regarding the full scope and understanding as to what his mother and his other relatives may have been involved in. What about Adriana? Well, I think the situation is the same. I think her role was no different than David Navarrete's, where she was involved in the money laundering portion of it and opening bank accounts and depositing money. And she worked at the store. She worked at the establishment, right? Is it a furniture store? Your Honor, I don't recall that specifically. I believe that she, both my client and her client, were working at the time and during the course of the conspiracy. They both had legitimate jobs. My client was in college, and he's two credits short of graduating from UCSD. When you say my client, now you're talking about David or Adriana? I'm talking about David Navarrete. Adriana has a college degree, right? I'm sorry, Your Honor? Are you only arguing on behalf of David? Well, in terms of the role, Your Honor, I think the legal standard and application of the legal standard is the same for both David Navarrete and Adriana Navarrete. I'm just trying to figure out who you're arguing on behalf of. I thought you were going to speak to both David and Adriana. Yes, Your Honor. In terms of the legal standard that is applicable for both individuals, both individuals raised the same particular arguments. Right, and so I think you're arguing or started to argue that both of these two, brother and sister, only deposited funds. The scope of their involvement was only with the money laundering portion of the case. Yes, Your Honor. That's correct. So Adriana didn't have a special role regarding the establishment where the cars were, where the controlled substances were put into the car and loaded onto car carriers and taken across the country. She didn't play any special role in that part of the operation. To my recollection, Your Honor, no. She was not part of packaging cars into secret compartments or things of that nature. That's to my recollection, Your Honor. I could be mistaken, but ---- Well, anyway, so you're time-sticking. So your argument is that there wasn't a comparison done by the ---- that's what I take it to be. There wasn't a comparison by the trial court vis-à-vis these two defendants and the other folks who participated in the operation. Is that it? That's correct, Your Honor. And I think that there is the record is unclear as to whether or not the judge considered a comparison. And the judge in this particular case relied upon the pre-sentence report, which did not do any comparative analysis. In addition, the court stated that the drug guidelines don't work. He said each of these individuals is just a cog in the wheel. And no matter how small of a wheel it is, they still aren't deserving of minor role. So I think, Your Honor, the comments of the district court in this particular case make it clear that he did not apply the correct legal standard for minor role. Your Honor, you've got nine minutes, so we'd better give you until council sometime. Thank you, Your Honor. Thank you. Good morning, Gary Burcham. On behalf of Inri Queta Navarrete, she's defendant number one. I'm going to use no more than five minutes. And I would like to talk about the first issue of my brief, which is the district court's calculation of the guidelines. Ms. Navarrete pled guilty to both counts, count one, the drug count, count two, the money laundering count. Those counts group, which means the district court was required to independently calculate those two guidelines, then take the highest guideline, and that's the guideline that would drive the sentence. The mistake the district court made in this case is when it was computing the 2D1.1 guidelines, that's for count one, the drug count, it plugged in a 2S1.1 specific offense characteristic into the 2D1.1 guidelines, which you cannot do. There's no cross-reference from 2D1.1, the drug guideline, to 2S1.1, the money laundering guideline. I sound like a robot with all these numbers and guidelines. No, but I wonder, does it matter where it gets plugged in? I was trying to figure out whether it matters. I couldn't get there. Potentially no, but in this case it did. And the reason why it did in this case is because for count two, the money 2D1.1 specific offense characteristics, the stash house, the criminal livelihood. So for count two, the district court had a four-level lower 2D1.1 offense level, which it plugged in to the 2S guidelines, which meant that the higher guideline in this case by four levels was count one, and that's why it made a difference that it plugged in that 2S1.1 enhancement to the count one guideline. And just briefly, in terms of why does it matter, because she got 120 months from the district court. It matters because the district court said it wasn't going to give 61 months, which is what was recommended by the government, but it never said anything about, I'm going to give you 120 months, hell or high water. It gave 120 months. It said it wasn't going to give 61. It gave 120, but it never indicated that it was going to give 120 no matter what the guidelines were. So, of course, Rita, Cardi, those cases require the district court to start by properly calculating the guidelines. It didn't do so in this case, and so for that reason, I think we need a remand for that procedural error. If the court has no further questions, I'll submit. Thank you, Judge. It please the court, James Pfeiffer, Federal Defenders, appearing for Gloria Navarrete. I have ten minutes because I've got two issues. I mean, this is the case where the district court erred when it based two guideline enhancements on a single fact that is insufficient to satisfy the standard for either aggravating role or maintaining a stash house. The district court based both of these on the fact that the defendant relayed a one-time message to the stash house manager from the ringleader. That one event doesn't satisfy the indicia of aggravated role. This is the message to clean up the house? The message was, yes, to clean up the kitchen in the house because the police were coming. Yes. And as the prosecutor below said, I point out that, importantly, the government below never maintained that this mattered at all. They said that this doesn't show that she's issuing orders. This just shows this is communications between prosecutors. But is it really based upon that one telephone call? I thought the title to the stash house was in Gloria's name. Well, particularly for the stash house, there's two elements. There's no definition for maintaining in the guideline, but they do point to two factors. Factor A is some sort of possessory interest, dominion and control over the stash house. Factor B is having some sort of significant involvement in the activities. Specifically, the guideline says, having control over the access of the activities of the house. Now, there's no question that Gloria had legal title to it, but her title, her possession wasn't as strong as Lugo's. Lugo, who was identified by the probation officer as the manager of the stash house, she had actual possessory. She was actually an actual possession of the house, and she was the tenant, which means that she had superior legal control. In order to be eligible for this particular enhancement, must it be the case that Gloria had the most control over the stash, or maintained it more than anybody else? Is it a comparative thing? Well, I think it's hard to tell because of the way the guideline is written, because there's very little guidance given. I don't know of any authority that says that that's the case. It seems to me that I've always thought it was an on or off switch. She either qualifies as somebody who maintained the stash house or not, but I just wonder if you know of any authority where we've gone the other way. No, I think that's the problem, Your Honor, is that when I looked at the case law, there is case law that finds if you have factor B, that is evidence of involvement in drug trafficking at the house, that can be enough to get the enhancement, even when there's only slight evidence of possession of factor A. But I could find no case that's the opposite, where if you have some sort of possessory interest, but then there's no connection to the drug trafficking, that you can get that. But that's basically all that the district court relied on, was the fact that she owns the house. She owns the house. She's on the title. The only factor B, the only involvement, that the district court ever pointed to was this call to clean up the house. Phone call. Yeah. That's the only factor B. That's the only involvement. And I would say that that doesn't actually satisfy the legal standard, because the legal standard, as far as is laid out in the guidelines, is controls access. That doesn't show that she controls access to the house. In fact, she never showed up there. The surveillance didn't show that she came there. The evidence seems to be that she didn't have a key. And, of course, she's only the landlord, which means she can't control access. The tenant does. And it doesn't show that she controlled the activity, because of one time she relays a message from the ringleader, clean up the house. She's just the conduit. She's not issuing orders. She's not controlling the activity. She owns the house. She does. She's on the title. Yes. I'm not sure what you mean by that. But, okay, she's on the title. Yes. And it's one thing to say, look, you're a landlord. You rented to a bunch of people, and they own a stash house there. You don't know anything about it. So you say, I have no involvement. But once you call in and you say, clean it up, because the police might be coming, then why doesn't that taint the entire relationship? Why doesn't that say, look, you're the owner. You are renting it out to people that you know are drug people. And, therefore, you are, in fact, maintaining. You don't have to have actual day-to-day involvement. It's enough that you provide a venue for them to conduct their drug activities. Well, Your Honor, it doesn't seem like that's the case from the case laws, that the cases where they've upheld it, there is some sort of possessory interest. There's some sort of dominion and control, whether it's title or actual possession, something like that. And the person also has to be, from the cases, they have to be pretty much involved in the ongoing activities, the drug trafficking activities at the stash house. I'm sorry. They say it's not enough? I mean, you have cases that say it's not enough? Well, at least by inference, the cases that have been cited by both parties, there's been a lot of involvement. The defendant had quite a bit of involvement, ongoing multiple involvement with different transactions, activities. But the only thing here is the one call. Do they have an ownership interest? They had some sort of possessory interest. As I'm saying, the cases have found that there's been sufficient factor A, the possessory interest, even when it's kind of weak. But when they find strong evidence of involvement, then that's fine. But here we have the opposite. We have some evidence. We have conflicting evidence of who is in possession, who has control over access and the activity, over the access, because there are two different people who have legal right to control access, the landlord and the tenant. I would say the tenant has a stronger interest because they have actual possession. So let me just make sure I understand your position. Your position is if you're a landlord, if you own a house, and you know that somebody's a drug dealer, and they come to you and they say, we're going to cook meth in the house. We're going to use the house to cook meth and then use it also as a basis for operation, distribution, all that. And you say, swell, here's the money, and you do nothing else. Yes. You think that is not enough, in your view, to say you're maintaining a stash house? You know what it reminds me of? It seems like some of the body house cases that I learned about in law school where a landlord knows that there's prostitution going on, but he's not doing anything to encourage it. He just knows about it. He's not stopping it. But that wasn't even enough, as I remember these cases correctly, that wasn't enough to be a conspirator because he wasn't actually agreeing to it. He was simply tolerating it. Well, I think the more close analogy are the dance hall cases in copyright law. The people who maintain the dance hall and they collect the rent and there's infringement going on. And what we say in those cases is if you are maintaining a dance hall, you are profiting off the copyright, you are a contributory infringer. That's the analogy I see. I'm not familiar with those cases, so I can't comment directly. But I think that that could be a unique kind of situation about copyright law and infringements. But, you know, this is actually just a question of construing the guidelines. I mean, getting back to that, and the question is, you know, your view is you actually have to get your hands dirty. Just providing a place that you know is being used by other people to drug dealing is, in your view, not enough to invoke this. Yes, Your Honor. And I'm disinclined to believe that. And I'm wondering if there's any case that says, no, that's not enough. No, Your Honor. There's no cases on what I describe the case law as, like the cases that allow weaker evidence of possessory interest when there's strong evidence of actual involvement in the illegal activity, showing actual control. But I couldn't look at all the cases that have been cited. There's no case that I can find where simply having a knowing possessor and knowledge, of course, is required, that's a given, that knowing possessory interest in the property but no involvement or extremely slight involvement in the activities, no control over the activities. This one incident of making a phone call, relaying a message, not issuing an independent order on your own discretion off her own back, but just conveying, as the prosecutor below said, that the ringleader was speaking in Gloria's ear, just passing on, just being a relay, doesn't make you a controller of the activities at that house. Even if you know what's going on there, you're not controlling them if you simply pass on a message. Any more than a receptionist who passes on a message is the controller just simply because they pass a message from one person to another. Your time is over. We'll give you a couple of minutes to rebuttal however you want to split it. Pick one person to rebuttal. May it please the Court, Daniel Zip on behalf of the United States. Your Honors, I'm going to handle Enriquez's argument for five minutes and then hand over to my colleague for the remaining 15 minutes for the other three defendants. As to Enriquez, the question is whether the Court properly applied the money laundering plus two when calculating the drug guidelines. Yes, we can talk about that as well. I'm hoping you're going to get to that. Absolutely. Well, then just briefly to touch on the first one, Your Honor asked does it matter that the Court applied the plus two onto the drug guidelines, and it's our position that it doesn't matter, that ultimately the end result in this case would be the same. 2S1.1A requires the Court to start with the base offense level for the drug guidelines. 1B1.5 says that when you're transferring that base offense level over, you include not only the drug base offense level but any specific offense characteristics, including the stash house and the criminal likelihood. So what the Court did here was calculate the drug offense, which is correct, and then add a plus two for the money laundering. The only step that it missed in its explanation was it didn't say that it had moved the drug guidelines back into the money laundering before adding that plus two, but the outcome was correct, and there's no need to remand for the Court to essentially explain that last step. Unless the Court has questions on that. We agree that the district court in this case did abuse its discretion by declining to seal the government's memo in this case. Can I just, because I'm going to be, there's some mistakes made, and I don't want to perpetuate a problem, but if, are we talking about the docket as well as the, so there are docket entries that are available electronically? Yes, right now there is. If you're talking about an abuse of discretion, I think you're conceding, I'm just trying to figure out the scope of the remedy. There are docket entries? Certainly, as it stands now, the document itself, if anyone can access it by clicking on ECF, we would ask that that document, the motion itself, be under seal. I believe the docket entry itself also mentions that, so, yes, that should be essentially removed from public view as well. That was my only question. Unless the Court has any other questions. I take it this video, a video of this hearing should also be sealed. This hearing. I think what we did on a similar case earlier this year was, because no one had talked about any details, it was ultimately the hearing video was unsealed. I don't think there's been anything said here that would necessarily require sealing, but I would defer to the Court on that. Thank you. Thank you. May it please the Court. Ajay Krishnamurthy for the United States. I'd like to start by briefly addressing the Stash House issue, our position that it is enough for someone to knowingly open their house to drug-crafting activity, and that's what happened here. But beyond that, there is also evidence that Gloria had her hands dirty at the house. Other than the phone call, what's the evidence? So there's instance where she picked someone up from the house and drove him to the airport. That person then got on a flight to New York and received a shipment of drugs. But didn't she have a personal relationship with that person? I don't think that was the person with whom she had a personal relationship. There's also an instance in which she tried to coordinate the shipment of a car containing drugs from Arizona to the house. It was ultimately intercepted. So there was a lot of evidence that she was abundantly aware that this house was being used for drug-crafting and as part of her family's conspiracy. Can I ask a question about Adriana? I think the PSR says that she worked at the furniture store that was used as the address where these cars loaded with controlled substances were going to be shipped to and from. Is that wrong? No, that's correct. She worked at a furniture store named Bassett Furniture. There were cars being shipped to that address that were then used as load vehicles to transmit narcotics. There are a number of other issues that have been raised. I don't think the defense has discussed them, but if the court has any questions about any of them, I'm happy to answer any questions. No, thank you. Thank you. Your Honor, I'll be very brief. Just some points related to Gloria Navarrete. First of all, I would like to draw the court's attention, as mentioned in the brief, to the case Avila. It's a case that Judge Reinhardt and Judge Kuczynski sat on. It was similar here where the court found that simply relaying information about the drug deals, just being the go-between information, the conduit of information, doesn't qualify you for an aggravating role. That's being a conduit is not the case. Was there ownership there? I'm just talking about aggravated role in that case. Aggravated role, sorry. Yeah, but that is an indication that passing information, being the postman, doesn't make you a manager. I'm sorry, but which defendant are you now talking about? Gloria Navarrete. But she also owns the house. She does own the house. I'm sorry, so I was right. So the house ownership applies to the stash issue, which was a safe house issue earlier. But why doesn't it also, you know, this is not a gopher. This is not somebody who's hired to be a messenger. This is somebody who owns a significant piece of property that's being used in the drug trade. That's correct, Your Honor, but that's just one of the two factors. And the guideline says and, which means that it seems like you have to have proof of both of these factors. Factor A is a possessory dominion and control. Factor B is being significantly involved in the activities such that you can control access. That's why I asked you, is the case that you cited that Judge Reinhart and I were on a case where you also had ownership? No, that wasn't a stash house case. That was an aggravated role case. So I was just talking about aggravated role. But the problem here is the district judge was relying on this one fact, the phone call, for both of these guidelines. But there were other phone calls that weren't there that evidenced that Gloria was right in the thick of these communications? Maybe not. I grant you I think there's just one answer to the stash house, but what about, I think there are many, where she's involved in relaying communications back and forth for her mother to other members of the drug trafficking organization. Am I wrong? No, that's true. But she was not. The point is she was conveying information from her mother to other people and from other people to her mother. And that's not enough for aggravating role? That's your argument? No, Your Honor, it's not. That's what the Avila case says. So now we're talking about lots of calls, lots of communications, and that's not enough is your argument? Well, when you look at the PSR, the description of these phone calls, what these phone calls are, are other participants telling her, tell Henrietta this, tell her this, tell her this, and just exchanging information back. There's nothing that shows that Gloria was the person that this was being reported to her because she had some authority to do something about it. She's not a decision maker, but she's relaying information back and forth. That's my image of this. Yes, yes, correct. And that's my argument, that she's simply a conduit for information, and that in Avila was found to be insufficient for aggravating role. Did Avila involve lots and lots of communications or a single communication? I think the PSR points to, and the government in their briefs point to two, in addition to the call to clean up the house. No, no, I'm asking, you're pointing out that my two colleagues were on Avila and that relaying information is not enough for aggravating role. My question is, in Avila, in that case, because I'm not as familiar as apparently my colleagues are, were the communications in that case limited to a single phone call or in this case I think there were many? No, there was actually multiple conversations, but the point in Avila was that he was simply conveying the information from the wholesaler to the buyers. He wasn't setting the prices. He wasn't making any determination. He was simply conveying the information. And there were multiple interactions that Avila was involved in, but this was the point that the court made is that, well, he's not setting the price. How about if you give me the citation to that case? Yes, it's 95-Fed-3rd-887. Thank you. Sure. Thank you very much. One last point is that it was the boyfriend that she was simply picking him up to take him to the airport, and as the record cite that the district court relied on this solely rather than some other evidence, the phone call is at ER-46 and ER-51-52. Thank you very much. The case just argued will be submitted. The court will stand adjourned for the day. All rise.
judges: Reinhardt, Kozinski, Christen